UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, f/k/a THE TRAVELERS INDEMNITY COMPANY OF ILLINOIS, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | 12-03098 |
| DISH NETWORK, LLC, | ) ) ) | |
| Defendant. | ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

This cause is before the Court on the Motion for Summary Judgment (d/e 20) filed by Plaintiff Travelers Property Casualty Company of America, f/k/a The Travelers Indemnity Company of Illinois ("Travelers"). Travelers seeks an order declaring that Travelers has no duty to defend DISH Network, LLC, ("DISH Network") under the Travelers Policy, granting Travelers' Summary Judgment Motion, and dismissing with prejudice DISH Network's Counterclaims.

Defendant DISH Network has filed a Cross-Motion for Partial Summary Judgment (d/e 24) in which DISH Network seeks an order granting the Cross-Motion and declaring that Travelers has a duty to defend DISH Network's interests in the Underlying Lawsuit captioned as United States of America and the States of California, Illinois, North Carolina, and Ohio v. DISH Network L.L.C., Case No. 3:09-03073 (C.D. Ill.) ("Underlying Lawsuit").

DISH Network's Cross-Motion for Partial Summary Judgment is GRANTED. Travelers has a duty to defend DISH Network's interests in the Underlying Lawsuit. Furthermore, Travelers' Motion for Summary Judgment is DENIED, as is Travelers' request for an order dismissing DISH Network's Counterclaims with prejudice. Additionally, DISH Network's Motion to Stay (d/e 33) is DENIED AS MOOT.

## I.    JURISDICTION AND VENUE

DISH Network is a Colorado Limited Liability Company with its principal place of business in Englewood, Colorado. Travelers is an insurance company incorporated in Connecticut with its principal place of business in Hartford, Connecticut. The amount in controversy

exceeds $75,000. Based on these facts, subject-matter jurisdiction exists pursuant to the Court's diversity jurisdiction. 28 U.S.C. § 1332.

Venue is proper in the Central District of Illinois, Springfield Division, because the Underlying Lawsuit that gives rise to this action was instituted against DISH Network in this Court. 28 U.S.C. § 1391.

## II.  <u>LEGAL STANDARD</u>

Summary judgment is proper if the movant shows that no genuine dispute exists as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the court of the basis for the motion and identifying the evidence that demonstrates the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). No genuine issue of material fact exists if no reasonable jury could find in favor of the nonmoving party. <u>Brewer v. Bd. of Trs. of the Univ. of Ill.</u>, 479 F.3d 908, 915 (7th Cir. 2007). When ruling on a motion for summary judgment, the court must consider the facts in the light most favorable to the nonmoving party, drawing all reasonable

inferences in the nonmoving party's favor.  <u>Woodruff v. Mason</u>, 542 F.3d 545, 550 (7th Cir. 2008).

III.  <u>BACKGROUND</u>

DISH Network is a Colorado Limited Liability Company, with its principal place of business in Englewood, Colorado.  Travelers is an insurance company incorporated in the state of Connecticut with its principal place of business is Hartford, Connecticut.

DISH Network was originally incorporated as EchoStar Satellite Corporation.  EchoStar Satellite Corporation was then converted into a limited liability company, EchoStar Satellite LLC.  EchoStar Satellite LLC was subsequently renamed DISH Network LLC.  DISH Network provides direct-to-the-home satellite television products and services.

Travelers sold a commercial general liability policy to DISH Network's predecessor, EchoStar Communications Corporation, for the period August 1, 2003, to August 1, 2004.  On May 11, 2012, Travelers filed a One-Count Amended Complaint seeking an order that declares Travelers has no duty to defend DISH Network's interests in the

Underlying Lawsuit pursuant to the Travelers Policy. See Am. Compl., d/e 8.

DISH Network filed an Answer to the Amended Complaint on June 14, 2012. See Answer, d/e 13. In the Answer, DISH Network raises three Counterclaims. In Count I, DISH Network seeks an order declaring Travelers has a duty to defend DISH Network's interests in the Underlying Lawsuit. In Count II, DISH Network alleges that Travelers breached the insurance contract. In Count III, DISH Network alleges a bad faith failure to defend. See id.

## A. The United States, California, Illinois, North Carolina, and Ohio Filed a Second Amended Complaint Against DISH Network in the Underlying Lawsuit on March 12, 2013

The Second Amended Complaint ("Underlying Complaint") in the Underlying Lawsuit that names DISH Network as the defendant was filed on March 12, 2013, in the United States District Court for the Central District of Illinois, Springfield Division. United States & the States of Cal., Ill., N.C., & Ohio v. DISH Network, L.L.C., Case No. 3:09-cv-03073, d/e 257. The Underlying Complaint generally alleges that DISH Network, either directly or indirectly, injured consumers in

the United States by making unsolicited telemarketing phone calls proscribed by state and federal laws, including the Telemarketing Sales Rule, the Telephone Consumer Protection Act (TCPA), and California, Illinois, North Carolina, and Ohio law. The plaintiffs in the Underlying Lawsuit seek injunctive relief and money damages.

**B.** **The Commercial General Liability Policy Contains Provisions for Bodily Injury, Property Damage, Personal Injury, or Advertising Injury Liability Coverage**

Travelers issued the Commercial General Liability Policy at issue, policy number TC2J-GLSA-419J7603-TIL-03, to EchoStar Communications Corporation for the period August 1, 2003, through August 1, 2004. The Travelers Policy provides that Travelers will pay for damages arising out of bodily injury or property damage caused by the insured and not expected or intended by the insured:

Coverage A. Bodily Injury and Property Damage Liability provides:

1. **Insuring Agreement.**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which the insurance applies. We will have the right and duty to defend any "suit" seeking those damages.

\*\*\*

2.    **Exclusions.**

This insurance does not apply to:

a.  Expected or Intended Injury

<u>"Bodily Injury" or "property damage" expected or intended from the standpoint of the insured.</u>

D/e 25, Ex. 7 at 22 (emphasis added).

The Travelers Policy also provides that Travelers will pay for damages arising out of personal injury or advertising injury caused by the insured:

Coverage B.   Personal and Advertising Injury Liability provides:

1.    **Insuring Agreement.**

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies.  We will have the right and duty to defend any "suit" seeking those damages.

D/e 25, Ex. 7 at 25.

However, the Travelers Policy excludes coverage for personal injury if the injury is a result of advertising done by or for the insured:

> b.   This insurance applies to:
>
>> (1)   "Personal injury" caused by an offense arising out of your business, <u>excluding advertising, publishing, broadcasting or telecasting done by or for you</u> . . . .

<u>Id.</u> (emphasis added).

DISH Network argues that, under the Travelers Policy, Definitions 1.b (Advertising Injury), 3 (Bodily Injury), 13.e (Personal Injury), and 15.b (Property Damage) trigger Travelers' duty to defend DISH Network's interests in the Underlying Lawsuit:

> 1.   "Advertising injury" means injury arising out of one or more of the following offenses:
>
>> a.   Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;
>>
>> b.   <u>Oral or written publication of material that violates a person's right of privacy;</u>
>>
>> c.   Misappropriation of advertising ideas or style of doing business; or
>>
>> d.   Infringement of copyright, title, or slogan.
>
> ***
>
> 3.   "Bodily Injury" means bodily injury, sickness or disease sustained by a person, including death . . . .

\*\*\*

13. "Personal Injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord, or lessor;

   d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

   e. Oral or written publication of material that violates a person's right of privacy.

\*\*\*

15. "Property Damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

D/e 25, Ex. 7 at 30–32 (emphasis added).

Furthermore, on February 16, 2004, Travelers issued an endorsement for the purpose of amending the Bodily Injury Definition to include coverage for mental anguish caused by the insured:

> With respect to all operations, "bodily injury" in the DEFINITIONS section of this insurance is amended to include mental anguish.

D/e 25, Ex. 10 at 48. This endorsement was effective from August 1, 2003. Id. at 43.

The Travelers Policy also contains an exclusion to Advertising Injury Liability Coverage for advertising injuries arising out of an offense committed by an insured engaged in the businesses of broadcasting and/or telecasting:

> This insurance does not apply to . . . [a]dvertising injury arising out of . . . an offense committed by an insured whose business is advertising, broadcasting, publishing, or telecasting.

D/e 25, Ex. 7 at 25. Travelers asserts that this exclusion precludes any potential for Advertising Injury Liability Coverage because DISH Network engages in the businesses of broadcasting and telecasting.

**C.** **DISH Network Contests Travelers' Assertion that the Exclusion to Advertising Injury Coverage for Insureds Engaged in the Businesses of Broadcasting and/or Telecasting Applies in this Case**

The parties have submitted corporate documents describing the business operations of DISH Network's predecessor EchoStar Satellite Corporation on the issue of whether DISH Network engages in the businesses of broadcasting and/or telecasting. Travelers asserts that the corporate documents establish that DISH Network has continued EchoStar's primary business objectives, which include broadcasting and telecasting television programming to consumers.

The Articles of Incorporation of EchoStar Satellite Corporation, a Colorado Corporation, describe the company's goals and business operations:

> The powers vested in the corporation shall be all those powers which are not or hereafter may be granted by the Colorado Corporation Act under which this Corporation is organized, including, but not limited to the following:
>
> (1) To engage in the business of satellite communications, including but not limited to Direct Broadcast Satellite communications: to operate transmission and receiving stations and any connection between any such stations, and to transmit signals, and all matter and things of any kind, nature, and description whatsoever that may be transmitted.

D/e 25, Ex. 2 at 2.

Further, EchoStar's Annual Report for the year ending 12/31/03

and filed with the state of Colorado also describes the company's services

and goals:

> Echostar Communications Corporation, through its Dish
> Network, is a leading provider of satellite delivered digital
> television to customers across the United States. Dish
> services include hundreds of video, audio and data channels,
> interactive television channels, digital video recording, high
> definition television, international programming, professional
> installation and 24-hour customer service.
>
> We started offering subscription television services on the
> Dish Network in March 1996. As of December 31, 2003, the
> Dish Network had approximately 9.425 million subscribers.
> We currently have nine in-orbit satellites which enable us to
> offer over 1,000 video and audio channels to consumers
> across the United States. Since we use many of these
> channels for local programming, no particular consumer could
> subscribe to all channels, but all are available using small
> consumer dishes. We believe that Dish Network offers
> programming packages that have a better "price-to-value"
> relationship than packages currently offered by most other
> subscription television providers.
>
> ***
>
> *The DISH Network* . . . provides a direct broadcast satellite
> subscription television service . . . .

D/e 25, Ex. 5 at 9.

In addition to these corporate records, Travelers has attached to its Motion for Summary Judgment documents provided to EchoStar by EchoStar's insurance broker, Lockton Companies, dated May 3, 2001, July 26, 2001, and July 16, 2002. Lockton Companies' documents notify EchoStar of the option to purchase Broadcaster's Errors and Omissions Coverage among other coverage options. See d/e 21, Ex. 10 at 6, Ex. 11 at 5–6, & Ex. 12 at 4. Travelers asserts that the broker's proposals to DISH Network's predecessor, EchoStar, put DISH Network on notice that the Travelers Policy never covered advertising injuries caused by an insured whose businesses are broadcasting and/or telecasting.

The parties have fully briefed the Cross-Motions, and the Court heard argument on the Cross-Motions on June 3, 2013.

## IV. ANALYSIS

In support of DISH Network's Cross-Motion for Partial Summary Judgment, DISH Network argues that, under Colorado law, Travelers is prematurely seeking an order declaring Travelers has no duty to defend DISH Network's interests in the Underlying Lawsuit. DISH Network

then argues that, even if this action were ripe for decision, under Illinois insurance policy interpretation principles, Travelers has a duty to defend the Underlying Lawsuit pursuant to the Travelers Policy's Advertising Injury, Personal Injury, Property Damage, and Bodily Injury Liability Coverage. DISH Network also contends that the exclusion to Advertising Injury Liability Coverage for entities engaged in the businesses of broadcasting and/or telecasting does not apply and that the damages and injunctive relief sought by the United States and state plaintiffs in the Underlying Lawsuit are covered by Travelers' policy.

Travelers, to the contrary, asserts that this declaratory action is not premature and that Travelers, under Colorado insurance policy interpretation principles, has no duty to defend DISH Network's interests in the Underlying Lawsuit. Travelers also argues that the exclusion to Advertising Injury Liability Coverage for insureds engaged in the businesses of broadcasting and/or telecasting applies and the damages and injunctive relief sought in the Underlying Lawsuit are not covered under Travelers' insurance policy as a matter of Colorado public policy.

**A.** **The Court Must Apply Illinois Law if Illinois Law is the Same as Colorado Law on a Given Issue**

The Travelers Policy does not contain a choice-of-law clause. Where an insurance policy contains no choice-of-law clause and a federal court sits in diversity, as is the case here, the court must apply the choice-of-law rules of the jurisdiction in which the court sits. In this case, the jurisdiction is Illinois. <u>Mass. Bay Ins. Co. v. Vic Koenig Leasing Co.</u>, 136 F.3d 1116, 1122 (7th Cir. 1998) (applying Illinois choice-of-law rules because federal court had diversity jurisdiction and was in Illinois).

In Illinois, a choice-of-law analysis is required only if the potentially applicable laws yield different results on a given issue. <u>In re Air Crash Disaster Near Chi.</u>, 644 F.2d 594, 605 (7th Cir. 1981); <u>Townsend v. Sears, Roebuck & Co.</u>, 879 N.E.2d 893, 899 (Ill. 2007). If application of Illinois and another state's law to a given issue yields the same result, then courts will apply Illinois law. <u>Dearborn Ins. Co. v. Int'l Surplus Lines Ins. Co.</u>, 719 N.E.2d 1092, 1096 (Ill. 1999). In this case, Colorado law will therefore apply only to those issues on which Colorado law and Illinois law would yield different results. Where Illinois and Colorado law yield the same result, this Court will apply Illinois law.

The Court must make this determination for each issue in the instant case.  Int'l Adm'rs, Inc. v. Life Ins. Co. of N. Am., 753 F.2d 1373, 1375 n.4 (7th Cir. 1985).

**B.      Travelers Has Not Instituted this Declaratory Action Prematurely Because Deciding Whether Travelers Has a Duty to Defend the Underlying Lawsuit Will Not Compromise DISH Network's Defense of the Underlying Lawsuit**

Illinois and Colorado law are substantially similar regarding when a party may file an action that seeks a declaratory judgment on the insurer's duty to defend.  Specifically, under Illinois and Colorado law, a party may file a declaratory judgment action before the underlying litigation has concluded if an actual controversy exists; a declaratory judgment will fully and finally resolve the uncertainty and controversy as to all parties with a substantial interest in the matter that could be affected by the judgment; and the anticipatory declaratory judgment action is independent of and separable from the underlying action. Constitution Assocs. v. N.H. Ins. Co., 930 P.2d 556, 561 (Colo. 1996) (holding that a judgment against the insured in the underlying case is not an absolute prerequisite to filing a declaratory judgment action to determine coverage.); Bituminous Cas. Corp. v. Fulkerson, 571 N.E.2d

256, 260–61 (Ill. App. 1991) (holding that grant of insurer's summary judgment motion in declaratory action on duty to defend was inappropriate where the trial court granted the motion after deciding issues that were germane to the underlying case). Additionally, when ruling on a declaratory action regarding the duty to defend, Illinois and Colorado courts only compare the pertinent policy language and underlying complaint to avoid addressing issues that are germane to the underlying lawsuit. See, e.g., Am. States Ins. Co. v. Koloms, 687 N.E.2d 72, 75 (Ill. 1997); Hecla Mining Co. v. N.H. Ins. Co., 811 P.2d 1083, 1089 (Colo. 1991).

In this case, ruling on Travelers' declaratory action is appropriate because the only issue is whether any of the allegations in the Underlying Complaint potentially fall within any coverage provision of the Travelers Policy. See Lyerla v. AMCO Ins. Co., 536 F.3d 684, 688 (7th Cir. 2008) (citing Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co., 828 N.E.2d 1092, 1098 (Ill. 2005)) ("An insurer is obligated to defend its insured if the underlying complaint contains allegations that potentially fall within the scope of coverage."). Deciding this issue will

fully resolve whether Travelers has a duty to defend and will in no way address the central issue in the Underlying Lawsuit which is whether DISH Network made telemarketing phone calls in violation of state and federal law.

C. **The Court Will Apply Illinois Law When Interpreting the Travelers Policy Because Illinois and Colorado Laws Do Not Conflict**

Having determined that the action is not premature, the Court must now decide what law applies when interpreting the Travelers Policy. Travelers argues that Colorado law applies because Illinois and Colorado courts employ different policy interpretation principles. In support of this argument, Travelers asserts that Colorado courts, unlike Illinois courts, look at closely related or associated policy language to illuminate the meaning of insurance coverage provisions. See d/e 21 at 18 (citing Noyes Supervision, Inc. v. Canadian Indem., 487 F. Supp. 433, 437 (D. Colo. 1980) (citing Martinez v. People, 137 P.2d 690 (Colo. 1943)). This interpretation principle set forth by Travelers is referred to as ejusdem generis, which means "of the same kind." Black's Law Dictionary 535 (7th ed.).

Contrary to Travelers assertion, however, Illinois courts also employ the principle of ejusdem generis to interpret insurance contracts. See, e.g., Gullett v. St. Paul Fire & Marine Ins. Co., 446 F.2d 1100, 1103 (7th Cir. 1971); Bituminous Cas. Corp. v. Chi., Rock Island & Pac. R.R. Co., 289 N.E.2d 464, 466 (Ill. App. 1972) (applying principle of ejusdem generis in declaratory judgment action brought by insurer against insured in order to determine coverage under a comprehensive general liability insurance policy).

Moreover, in both Illinois and Colorado, the construction of insurance policies is a question of law. See, e.g., Am. States Ins. Co., 687 N.E.2d at 75; Cyprus Amax Minerals Co. v. Lexington Ins. Co., 74 P.3d 294, 299 (Colo. 2003). In construing an insurance policy, both states find that courts must ascertain and give effect to the intentions of the parties as expressed in their agreement. See, e.g., Hobbs v. Hartford Ins. Co. of the Midwest, 823 N.E.2d 561, 564 (Ill. 2005); Allen v. Pacheco, 71 P.3d 375, 378 (Colo. 2003). If the terms of the policy are clear and unambiguous, then Illinois and Colorado courts give the terms their plain and ordinary meaning. See, e.g., Nicor, Inc. v. Associated Elec. & Gas

Ins. Servs. Ltd., 860 N.E.2d 280, 287 (Ill. 2006); Compass Ins. Co. v. City of Littleton, 984 P.2d 606, 613 (Colo. 1999). Conversely, if the terms of the policy are susceptible to more than one meaning, then Illinois and Colorado courts consider the terms ambiguous and construe the policy strictly against the insurer who drafted the policy. See, e.g., Rich v. Principal Life Ins. Co., 875 N.E.2d 1082, 1090 (Ill. 2007); Parrish Chiropractic Ctrs., P.C. v. Progressive Cas. Ins. Co., 874 P.2d 1049, 1056 (Colo. 1994). Courts in Illinois and Colorado construe the policy as a whole, taking into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract. See, e.g., Rich, 875 N.E.2d at 1090; Cyprus Amax Minerals Co., 74 P.3d at 299. Further, in a declaratory action, courts in Illinois and Colorado will find a duty to defend even if only one theory alleged in the underlying complaint is potentially within the policy's coverage. U.S. Fid. & Guar. Co. v. Wilkin Insulation Co., 578 N.E.2d 926, 930 (Ill. 1991); Hecla Mining Co., 811 P.2d at 1089.

Therefore, Illinois and Colorado courts use similar insurance policy interpretation methods and principles. Accordingly, the Court will apply

Illinois law to determine whether Travelers has a duty to defend the Underlying Lawsuit pursuant to the Travelers Policy's Advertising Injury, Personal Injury, Property Damage, or Bodily Injury Liability Coverage.

1. **The Unsolicited Communications Claims in the Underlying Lawsuit Potentially Fall Within the Travelers Policy's Advertising Injury Liability Coverage**

DISH Network first argues that Travelers has a duty to defend pursuant to the Advertising Injury Definition in the Travelers Policy that provides coverage for advertising injuries arising out of the "[o]ral or written publication of material that violates a person's right of privacy." D/e 25, Ex. 7 at 30. DISH Network asserts that the right of privacy contemplated by this definition includes an individual's right to be free from the dissemination of private content about the individual and the individual's right to remain undisturbed. The latter privacy interest, the right to remain undisturbed, is the privacy interest at issue in the Underlying Lawsuit in which the United States and state plaintiffs allege that DISH Network made unsolicited telemarketing phone calls in violation of state and federal law.

In response, Travelers asserts that the right to privacy contemplated by the Advertising Injury Definition does not include the right to remain undisturbed that is at issue in the Underlying Lawsuit. According to Travelers, the right to privacy in the Advertising Injury Definition only pertains to an individual's right to be free from the dissemination of private content about that individual.

The Illinois Supreme Court has held that in the context of an advertising injury arising out of the "[o]ral or written publication of material that violates a person's right of privacy," the person's right of privacy encompasses not only an individual's right to be free from the dissemination of private content about that individual, but also an individual's privacy interest to be left alone. Valley Forge Ins. Co. v. Swiderski, 860 N.E.2d 307, 316–17 (Ill. 2006). In Swiderski, Ernie Rizzo filed a three-count complaint in McHenry County, Illinois Circuit Court against Swiderski Electronics, Inc. Id. at 310. According to the complaint, Swiderski sent Rizzo and other individuals a fax advertisement with information on the sale, rental, and service of various types of electronic equipment. Id. The complaint alleged that, by faxing

copies of the advertisement without first obtaining the recipients' permission to do so, Swiderski violated the Telephone Consumer Protection Act, unlawfully converted the fax machine toner and paper of those who received the faxes, and violated Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act.  Id.

Swiderski tendered the defense of the lawsuit to Swiderski's primary insurer, Valley Forge Insurance Company, and Swiderski's excess insurer, Continental Casualty Corporation.  Id.  Under the Valley Forge Policy, Valley Forge had a duty to defend Swiderski against any suit seeking damages caused by personal and advertising injury.  Id. at 310–11.  Personal and advertising injury included, among other injuries, injuries arising out of the "[o]ral or written publication, in any manner, of material that violates a person's right of privacy."  Id. at 311.  Like the Valley Forge Policy, the Continental Casualty Corporation covered advertising injury arising out of the "[o]ral, written, televised or videotaped publication of material that violates a person's right of privacy."  Id.

Valley Forge and Continental informed Rizzo that the claims in the underlying complaint were not covered by the policies and sought a declaration that they had no duty to defend or indemnify Swiderski. Id. at 311–12. Subsequently, the insurers filed a petition for leave to appeal with the Illinois Supreme Court, which the court allowed. Swiderski, 860 N.E.2d at 313.

On appeal to the Illinois Supreme Court, the insurers argued that the advertising injury definitions in the policies, which covered liability resulting from an insured's written publication of material that violates a person's right of privacy, was applicable only where the content of the published material reveals private information about a person that violates the person's right of privacy. Id. According to the insurers, however, the basis of the Telephone Consumer Protection Act liability alleged in Rizzo's complaint was the mere sending of an unsolicited fax containing no private information. Id.

After hearing the parties' arguments, the Illinois Supreme Court addressed the advertising injury definitions at issue and rejected the insurers' reasoning. Specifically, the court construed the meaning of the

operative terms "publication," "material," and "right of privacy" by consulting the dictionary.  Id. at 316.  In doing so, the court explained that the definitions confirm that the right of privacy encompassed by the advertising injury definitions includes an individual's privacy interest to be left alone and the interest to be free from the unwanted distribution of private information about that individual.  Id. at 317–18.

In the present case, the Advertising Injury Definition at issue—i.e., any advertising injury arising out of the "[o]ral or written publication of material that violates a person's right of privacy"—contains the terms "publication," "material," and "right of privacy."  The Illinois Supreme Court's analysis of these terms in Swiderski reveals that, under Illinois insurance policy interpretation principles, the Advertising Injury Definition in this case applies to advertising injuries arising out of the insured's violation of an individual's right to be left alone and right to be free from the dissemination of private content about that individual.  See id. at 318 ("Th[e] definitions [of publication, material, and right of privacy] confirm that right of privacy connotes both an interest in seclusion and an interest in the secrecy of personal information.").

Travelers is wrong to assert that the Advertising Injury Definition at issue implicates only an individual's interest to be free from the unwanted dissemination of material the content of which violates that person's right of privacy. Under Illinois law, the right of privacy also includes the right to be left alone. Accordingly, the claims in the Underlying Complaint that allege DISH Network directly or indirectly violated federal and state law by making unsolicited telemarketing phone calls that infringed on consumers' right to be left alone potentially fall within the Advertising Injury Liability Coverage of the Travelers Policy.

2. **The Exclusion to Advertising Injury Coverage for Insureds Engaged in the Businesses of Broadcasting and/or Telecasting Does Not Preclude Finding a Duty to Defend**

Travelers contends, however, that the exclusion to coverage for an advertising injury arising out of an offense committed by an insured engaged in the businesses of broadcasting and/or telecasting (the "broadcasting exclusion") applies in this case and precludes any potential for Advertising Injury Liability Coverage. See d/e 25, Ex. 7 at 25 ("This insurance does not apply to . . . [a]dvertising injury arising out of . . . [a]n offense committed by an insured whose business is advertising,

broadcasting, publishing, or telecasting.").  In support of this argument, Travelers has attached documents to its Memorandum in Support of its Motion for Summary Judgment (d/e 21) that Travelers contends contain evidence demonstrating DISH Network is engaged in the businesses of broadcasting and/or telecasting.  DISH Network argues, however, that the Court may only look at the Underlying Complaint and the Travelers Policy to determine whether the exclusion to Advertising Injury Liability Coverage applies.

Regarding exclusions in an insurance policy, both Illinois and Colorado require the insurer to establish that the exclusion applies.  <u>See, e.g.</u>, <u>U.S. Fid. & Guar. Co.</u>, 578 N.E.2d at 930–33; <u>Hecla Mining Co.</u>, 811 P.2d at 1090.  In Illinois, however, when a court considering a declaratory judgment action must resolve factual questions relevant to an insurer's duty to defend its insured in another unresolved suit, the court may examine the underlying complaint, the relevant policy provisions, and extrinsic evidence.  <u>See, e.g.</u>, <u>Fremont Comp. Ins. Co. v. Ace-Chi. Great Dane Corp.</u>, 710 N.E.2d 132, 138–39 (Ill. App. 1999) ("Although it is true that an insurer's duty to defend flows in the first instance from

the allegations of the underlying complaint, this 'general rule' does not support the proposition that a court, in a declaratory judgment proceeding where an insurer's duty to defend is at issue, may never look beyond the allegations of the underlying complaint. . . . [I]f a court in a declaratory judgment action is permitted to make such factual determinations prior to the resolution of the underlying litigation, the court may consider extrinsic evidence bearing on the question of coverage and is not restricted only to a consideration of the allegations of the complaint in the underlying litigation and the terms of the insured's policy."). On the other hand, the Colorado Supreme Court has not determined whether Colorado courts will, in addition to comparing the underlying complaint and the insurance policy provisions at issue, look at evidence outside of those documents when deciding if an exclusionary provision applies. See Pompa v. Am. Family Mut. Ins. Co., 520 F.3d 1139, 1147 (10th Cir. 2008) ("Although the Colorado Supreme Court has not recognized any exceptions to the complaint rule, other courts have."). Because there is no conflict between Illinois and Colorado law at present, the Court will apply Illinois law and will consider the Underlying

Complaint, the policy terms at issue, and extrinsic evidence when deciding whether DISH Network is engaged in the businesses of broadcasting and/or telecasting and, accordingly, whether the broadcasting exclusion applies.

In the Underlying Complaint, DISH Network is described as a telemarketer and seller of satellite television programming to consumers. See Case No. 09-3073, 2d Am. Compl., d/e 257 at ¶ 23 (DISH Network is a "'telemarketer' engaged in 'telemarketing,'" and "a 'seller' [because DISH Network] provides satellite television programming to consumers."). Even when considering the descriptive allegations of the Underlying Lawsuit in the light most favorable to Travelers, these allegations alone do not establish that DISH Network engages in the businesses of broadcasting and/or telecasting. Furthermore, the Travelers Policy does not define the terms broadcasting and telecasting. Therefore, the Court must turn to extrinsic evidence.

In the absence of a definition in the policy, Illinois and Colorado courts use dictionaries to ascertain the meaning of policy terms and give effect to the intentions of the parties as expressed by the words in the

policy.  See, e.g., Swiderski, 860 N.E.2d at 314, 316; Thompson v. Md. Cas. Co., 84 P.3d 496, 502–03 (Colo. 2004).  If the words used in the insurance policy are reasonably susceptible to more than one meaning, then they are considered ambiguous and will be construed strictly against the insurer who drafted the policy.  See, e.g., Swiderski, 860 N.E.2d at 316; Hecla Mining Co., 811 P.2d at 1090–91.

In Webster's Third New International Dictionary, the term "telecasting" is defined as "to broadcast by television."  Webster's Third New International Dictionary 2349 (Philip Babcock Gove et al. eds., 1986).  This definition shows that the act of telecasting necessarily involves the act of broadcasting.  Therefore DISH Network cannot engage in telecasting unless DISH Network is also engaged in broadcasting.  Accordingly, the issue here is whether only one reasonable meaning of the term broadcasting exists, and, if so, whether DISH Network engages in the business of broadcasting.

Webster's Third New International Dictionary defines the term "broadcasting" as "to send out from a transmitting station (a radio or television program) for an unlimited number of receivers" or "to send out

radio or television signals." Id. at 280.  Thus, even Webster's Third New International Dictionary alone appears ambiguous; though DISH Network surely "send[s] out . . . television signals" when engaged in its business of providing direct broadcast satellite programming to consumers, it just as surely sends out these signals for its subscribers only, not "for an unlimited number of receivers."

Webster's has also issued a dictionary more specific to the world of telecommunications.  In Webster's New World Telecom Dictionary, the term broadcast television is defined as "[t]elevision programming sent over the air to all receivers."  Webster's New World Telecom Dictionary 69 (Ray Horak ed., 2008).  The broadcast television definition states, "See also narrowcast."  Id.  The Telecom Dictionary in turn defines "narrowcast" as "[r]eferring to the transmission from one device to a limited number of other devices on a network.  Cable television (CATV), direct broadcast satellite (DBS), and satellite radio use narrowcast transmission, as only subscribers to various channels, especially premium channels, are able to receive those transmissions."  Id. at 330.  Thus, the

Telecom Dictionary also appears to provide ambiguous definitions of "broadcasting," either for "all receivers" or for "only subscribers."

Reviewing these dictionary definitions, then, it appears that "broadcasting," and therefore "telecasting," can mean any instance of sending out television signals, which DISH Network surely does. "Broadcasting," and therefore "telecasting," can also mean the narrower act of making television and radio programming available on a subscription basis to a finite number of consumers. This is the type of broadcasting and telecasting done by DISH Network. But "broadcasting," and therefore "telecasting," can also mean the dissemination of television and radio programming to the public at large. DISH Network does not engage in this type of broadcasting and telecasting.

Travelers seeks to evade the ambiguity of the terms by reference to DISH Network's own corporate documents, which Travelers contends demonstrate that DISH Network is engaged in "broadcasting" or "telecasting." See Pl.'s Mem. Supp. Mot. Summ. J., d/e 21, Ex. 2 & Ex. 4 (the Articles of Incorporation and 2003 Annual Report of DISH

Network's corporate predecessor EchoStar). The Articles of Incorporation describe EchoStar's business operations as the transmission of satellite communications:  EchoStar engages in

> the business of satellite communications, including but not limited to Direct Broadcast Satellite communications:  to . . . operate transmission and receiving stations and any connection between any such stations, and to transmit signals, and all matter and things of any kind, nature, and description whatsoever that may be transmitted.

D/e 21, Ex. 2 at 1.  EchoStar's 2003 Annual Report states that DISH Network provides digital television to consumers via a direct broadcast satellite subscription service:  DISH Network

> is a leading provider of satellite delivered digital television to customers across the United States . . . [and] provides a direct broadcast satellite subscription television service . . . .

D/e 21, Ex. 4 at 4.  Travelers asserts that these references to DISH Network's direct broadcast satellite subscription television service support Travelers' argument that DISH Network engages in the businesses of broadcasting and/or telecasting.

Further, Travelers relies on documents from the insurance broker for DISH Network's predecessor, EchoStar, informing EchoStar that it could purchase Broadcaster's Errors and Omissions Coverage.  See d/e 21,

Ex. 10 at 6, Ex. 11 at 5–6, & Ex. 12 at 4 ("Dish's broker, in a series of proposals, pointed out the 'broadcasting' exclusion and advised Dish that 'Broadcaster's Errors and Omissions Coverage' was available to cover broadcaster risks."). Travelers asserts that these proposals by the broker demonstrate that DISH Network knew the Travelers Policy never covered advertising injuries committed by an insured engaged in the businesses of broadcasting and/or telecasting.

None of these documents, however, establish that DISH Network is engaged in broadcasting or telecasting, or that the broadcasting exclusion of its insurance policy applies. Rather, EchoStar's Articles of Incorporation and 2003 Annual Report show only that DISH Network sells subscription satellite programing packages to a finite number of consumers in the marketplace. As discussed, this type of broadcasting and telecasting differs from the dissemination of television programming to the public at large. Admittedly, the insurance broker knew that Broadcaster's Errors and Omissions coverage was available; EchoStar's insurance broker thought the coverage might be appropriate for EchoStar; and EchoStar declined to purchase the coverage. But EchoStar

may not have purchased the additional coverage because EchoStar believed that the broadcasting exclusion did not apply since its direct satellite broadcast subscription service was not disseminated to the public at large. Accordingly, these documents alone do not establish that DISH Network is engaged in broadcasting or telecasting, or that the broadcasting exclusion to Advertising Injury Liability Coverage applies.

To be sure, this Court's findings stand in contrast to a recent decision out of the United States District Court for the District of Colorado. In that decision, the district court applied Colorado law and considered the underlying complaint, the exclusionary terms at issue, and extrinsic evidence. After considering this evidence, that court found that an exclusion identical to the exclusion to advertising injury liability coverage in the instant case applied, and therefore precluded coverage. See Dish Network Corp. v. Arch Specialty Ins. Co., No. 09-cv-0047, 2013 WL 5735028, at *5–*8 (D. Colo. 2013) (finding that the exclusion for advertising injury liability coverage applied because DISH Network plainly engages in the businesses of broadcasting and telecasting).

Obviously, the Colorado District Court did not find that the terms broadcasting and telecasting were susceptible of two reasonable meanings. This conclusion, however, contradicts the fact that two reasonable meanings of the terms broadcasting and telecasting are provided in <u>Webster's New World Telecom Dictionary</u>. This Court respectfully disagrees with the Colorado District Court's decision. The terms broadcasting and telecasting are ambiguous such that the exclusion must be construed against Travelers, and Travelers therefore has a duty to defend DISH Network's interests in the Underlying Lawsuit because the potential for coverage exists under the Travelers Policy's Advertising Injury Liability Coverage.

3. **Travelers Has a Duty to Defend DISH Network's Interests in the Underlying Lawsuit Pursuant to the Travelers Policy's Personal Injury Liability Coverage**

DISH Network also argues that Travelers has a duty to defend DISH Network's interests in the Underlying Lawsuit pursuant to the Personal Injury Liability Coverage of the Travelers Policy, not just the Policy's Advertising Injury Liability Coverage. DISH Network contends that a duty to defend arises under the Travelers Policy's Personal Injury

Definition for personal injuries caused by the insured and arising out of the insured's "[o]ral or written publication of material that violates a person's right of privacy."  D/e 25, Ex. 7 at 31.

As stated, Illinois law applies to the interpretation of the Travelers Policy because Illinois and Colorado use similar insurance policy interpretation methods.  On that note, the Illinois Supreme Court has already interpreted the language at issue, namely, the "[o]ral or written publication of material that violates a person's right of privacy," albeit in the context of advertising injury liability coverage rather than the context of personal injury liability coverage as here.  The Illinois Supreme Court found that the terms publication, material, and right to privacy implicate injuries resulting from the invasion of an individual's right to be left alone and injuries arising out of the dissemination of private content about the individual.  Swiderski, 860 N.E.2d at 318.

Here, the Second Amended Complaint in the Underlying Lawsuit alleges that DISH Network directly or indirectly made telemarketing phone calls that violated individuals' right to be left alone.  Therefore, the potential for coverage exists under the Personal Injury Liability

Coverage of the Travelers Policy, and Travelers must defend DISH Network in the Underlying Lawsuit.

Travelers has not suggested that the Illinois Supreme Court might interpret the language under the Personal Injury Definition at issue differently than that court interpreted the same language under an advertising injury definition. Instead, Travelers contends that Personal Injury Liability Coverage does not apply because the alleged privacy violation occurred in the insured's advertisement, and that such a violation is excluded from coverage under the policy:

> This insurance applies to . . . "Personal injury" caused by an offense arising out of your business, <u>excluding advertising, publishing, broadcasting or telecasting done by or for you</u> . . . .

D/e 25, Ex. 7 at 25 (emphasis added).

When deciding if an insurer has a duty to defend, however, the question is whether any potential for coverage exists. <u>See Lyerla</u>, 536 F.3d at 688. The facts here may ultimately demonstrate that DISH Network did not in fact advertise, but rather merely solicited consumers in one-on-one phone calls. And, as Travelers has argued in a separate action before the Tenth Circuit, one-on-one solicitation differs from

advertising.  <u>See</u> d/e 27, Ex. 1 at 42 (Joint Br. of Defs.–Appellees at 29,

<u>DISH Network Corp. v. Arch Specialty Ins. Co.</u>, 659 F.3d 1010 (10th

Cir. 2011) (No. 10-1445), 2011 WL 1535434, at *29 ("[O]ne-on-one

solicitation of a few customers is not advertising and does not implicate

advertising injury coverage.")).[1]  Furthermore, as discussed above, the

issue of whether DISH Network is engaged in broadcasting or telecasting

under the terms of the policy is ambiguous, and this ambiguity must be

construed against Travelers as the insurer.

Whether the alleged telemarketing phone calls in the Underlying

Lawsuit constitute one-on-one solicitations or advertising is a question

yet to be decided in the Underlying Lawsuit.  Therefore, the advertising

exclusion to Personal Injury Liability Coverage may not apply, and the

potential for coverage exists under the Travelers Policy's Personal Injury

---

[1]  Tellingly, before the Tenth Circuit in <u>DISH Network Corp. v. Arch Specialty Insurance Co.</u>, Travelers asserted that DISH's one-on-one solicitations were not advertising because it sought to avoid its duty to defend DISH under a policy providing coverage for "advertising injury," which included the patent infringement claims alleged in the underlying case.  659 F.3d at 1013, 1019.  Today, Travelers asserts that DISH's one-on-one solicitations <u>were</u> advertising because it seeks to avoid its duty to defend DISH on a policy exempting "advertising injury" from coverage.

Liability Coverage. Accordingly, Travelers has a duty to defend DISH Network's interests in the Underlying Lawsuit.

### 4. The Potential for Property Damage Liability Coverage Exists

DISH Network further argues that Travelers has a duty to defend under the Travelers Policy's Property Damage Liability Coverage, noting that the Property Damage Definition includes loss of use of tangible property that is not physically injured. See d/e 25, Ex. 7 at 32 (Property Damage is defined to include "[l]oss of use of tangible property that is not physically injured."). DISH Network argues that the tying-up of a consumer's telephone line falls within this definition of Property Damage.

The Underlying Complaint alleges that DISH Network directly or indirectly made telemarketing phone calls to consumers in violation of state and federal law, specifically the Telephone Consumer Protection Act (TCPA). The natural consequence of such calls is that the consumers receiving them were unable to receive any other telephone calls for some time period. Tying up a consumer's telephone line arguably falls within the Travelers Policy's Property Damage Definition that includes the loss

of the use of tangible property that is not physically injured. Moreover, Illinois courts have upheld insurers' duty to defend their insureds in suits alleging violations of the TCPA and seeking statutory damages. See, e.g., Pekin Ins. Co. v. XData Solutions, Inc., 958 N.E.2d 397, 403–04 (Ill. App. Ct. 2011) (finding insurer's duty to defend, pursuant to a "property damage" clause, in underlying suit alleging both violations of the TCPA and common-law conversion claims); see also Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, 442 F.3d 1239, 1244–47 (10th Cir. 2006) (finding insurer's duty to defend, pursuant to a "property damage" clause including "[l]oss of use of tangible property that is not physically injured," in underlying suit alleging violations of the TCPA alone).

Travelers contends, however, that no potential for Property Damage Liability Coverage exists because the claims in the Underlying Complaint do not allege a covered "Occurrence" and are otherwise excluded by the "expected or intended injury" exclusion applicable to Property Damage Liability Coverage:

> This insurance does not apply to . . . "Bodily Injury" or "property damage" expected or intended from the standpoint of the insured.

Id. at 22. Under the Travelers Policy, an "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at 31. If the alleged injuries were expected or intended from DISH Network's standpoint, no accident, and therefore no "Occurrence," happened that would be covered under the Travelers Policy's Property Damage Liability Coverage.

As stated, Illinois insurance policy interpretation principles apply when construing terms of the Travelers Policy because Illinois and Colorado courts employ similar interpretation principles. Illinois courts have held that, when determining whether an occurrence is an accident, the inquiry is whether the injury is expected or intended by the insured, not whether the acts were performed intentionally. Lyons v. State Farm Fire & Cas. Co., 811 N.E.2d 718, 723 (Ill. App. 2004) ("The focus of the inquiry in determining whether an occurrence is an accident is whether the injury is expected or intended by the insured, not whether the acts were performed intentionally."). Furthermore, under Illinois law, if the intent of the alleged wrongdoer remains a key issue in the underlying lawsuit, Illinois courts will not prematurely decide in a declaratory action

that the alleged wrongdoer intended a consequence. See, e.g., State Farm Fire & Cas. Co. v. Shelton, 531 N.E.2d 913, 819 (Ill. App. 1988); see also Ins. Corp. of Hanover v. Shelborne Assocs., 905 N.E.2d 976, 984– 85 (Ill. App. 2009) (finding that insurer had duty to defend lawsuit under commercial general liability policy's property damage coverage based on underlying lawsuit that alleged improper fax communications and declining to find that the defendant in the underlying lawsuit intended the fax transmissions to cause property damage because the intent of that defendant was at issue in the underlying case).

In the Underlying Complaint, the state plaintiffs allege that DISH Network willfully and knowingly violated the Telephone Consumer Protection Act. See Case No. 09-3073, 2d Am. Compl., d/e 257 at ¶¶ 73, 77. In the prayer for relief, however, the state plaintiffs ask that the Court assess damages of $500 dollars for each violation of the TCPA if the Court finds that DISH Network's alleged violations of the Telephone Consumer Protection Act were not willful and knowing. Id. at 25 ¶ 4 (The state plaintiffs pray for "damages of $1,500 for each violation of the TCPA found by the Court to have been committed by Defendant

willfully and knowingly; if the Court finds Defendant has engaged in violations of the TCPA which are not willful and knowing, then assessing against Defendant damages of $500 for each violation of the TCPA, as provided by 47 U.S.C. § 227."). Based on this language in the Underlying Complaint, a question remains as to whether DISH Network directly and indirectly made telemarketing phone calls believing the calls were authorized. Determining DISH Network's intent is therefore not appropriate at this stage, because intent is at issue in the Underlying Lawsuit. Therefore, Travelers has a duty to defend based on the potential for coverage under the Travelers Policy's Property Damage Liability Coverage.

### 5. The Potential for Bodily Injury Liability Coverage Exists

The Travelers Policy also provides for Bodily Injury Liability Coverage for bodily injury, sickness, or disease caused by DISH Network. See d/e 25, Ex. 7 at 30 (Bodily Injury is defined as "bodily injury, sickness or disease sustained by a person" as a result of DISH Network's conduct). DISH Network notes that on February 16, 2004, the Bodily Injury Definition was amended to include coverage for "mental anguish."

See d/e 25, Ex. 10 at 48 ("With respect to all operations, 'bodily injury' in the DEFINITIONS section of this insurance is amended to include mental anguish.").

Black's Law Dictionary's definition of "mental anguish" refers the reader to the definition for "emotional distress." Emotional distress is defined in Black's as a negative mental reaction caused by another's conduct. Black's Law Dictionary 542 (7th ed.) (Emotional distress is defined as "[a] highly unpleasant mental reaction (such as anguish, grief, fright, humiliation, or fury,) that results from another person's conduct . . . ."). DISH Network argues that consumers may have experienced mental anguish as a result of the telemarketing phone calls allegedly made by DISH Network.

In the Underlying Lawsuit, the Second Amended Complaint alleges that consumers have and will continue to suffer injury as a result of DISH Network's conduct. See Case No. 09-3073, 2d Am. Compl., d/e 257 at ¶ 97. Based on these allegations, the facts in the Underlying Lawsuit may ultimately show that consumers experienced highly unpleasant mental reactions because of the telemarketing phone calls.

This conclusion is based on a liberal reading of the underlying allegations. But at the declaratory judgment stage, a duty to defend exists if allegations in the underlying complaint trigger any potential for coverage.

Travelers responds that no potential for Bodily Injury Liability Coverage exists because DISH Network expected or intended the harm. However, whether DISH Network acted intentionally remains in dispute in the Underlying Lawsuit, and, therefore, should not be decided at the declaratory judgment stage. See, e.g., Ins. Corp. of Hanover, 905 N.E.2d at 984–85. Accordingly, the claims in the Underlying Lawsuit may fall within the Travelers Policy's Bodily Injury Liability Coverage, and Travelers has a duty to defend DISH Network's interests in the Underlying Lawsuit.

## D. The Plaintiffs in the Underlying Lawsuit Seek Relief that May Be Covered Under the Travelers Policy

DISH Network finally argues in opposition to Travelers that, pursuant to Illinois law, the relief sought in the Underlying Complaint is insurable under the Travelers Policy. DISH Network contends that Illinois law applies because Illinois and Colorado law are similar on this

issue. DISH Network also notes that the Illinois Supreme Court has found that damages sought pursuant to the Telephone Consumer Protection Act are insurable. See Standard Mut. Ins. Co. v. Lay, 989 N.E.2d 591, 601 (Ill. 2013) (reversing appellate court holding that Telephone Consumer Protection Act's prescribed damages of $500 per violation are uninsurable).

Travelers argues, however, that Colorado law applies because, unlike the Illinois Supreme Court, the Colorado Supreme Court would hold that damages under the Telephone Consumer Protection Act are uninsurable as a matter of Colorado public policy. In support of this argument, Travelers notes that, in Kruse v. McKenna, the Colorado Supreme Court held that damages sought pursuant to the Telephone Consumer Protection Act are penal in nature. 178 P.3d 1198, 1201–02 (Colo. 2008) (finding that the Telephone Consumer Protection Act has created a new and distinct cause of action that permits $500 in liquidated damages per violative fax transmission and, that, based on these damages amounts, claims under the Telephone Consumer Protection Act are claims for a penalty). Travelers contends that the

penal nature of Telephone Consumer Protection Act damages renders such damages uninsurable as a matter of Colorado public policy.

Assuming, _arguendo_, that Colorado law applies, the damages sought in the Underlying Lawsuit may still be insurable. Specifically, Colorado courts have held that damages are uninsurable if such damages are a result of the insured's intentional and wrongful acts. See Am. Family Mut. Ins. Co. v. Johnson, 816 P.2d 952, 957 (Colo. 1991) ("[P]urpose of the exclusion of intentional injuries from coverage is to prevent extending to the insured a license to commit harmful, wanton, or malicious acts."). But intentional conduct was never addressed by the Colorado Supreme Court in Kruse. Instead, in Kruse, the Colorado Supreme Court focused solely on whether a party has standing to sue pursuant to the Telephone Consumer Protection Act based on the assignment of a Telephone Consumer Protection Act claim. See Kruse, 178 P.3d at 1202 ("Because McKenna purports to assert by assignment an unassignable claim for a penalty, we find that McKenna lacks standing."). The Colorado Supreme Court answered this question in the negative based on the penal nature of Telephone Consumer Protection Act damages. Since the

Colorado Supreme Court never addressed the intent or wrongful acts of the parties in <u>Kruse</u>, that case is not precedential on whether Telephone Consumer Protection Act damages are insurable as a matter of Colorado public policy.

Moreover, pursuant to the TCPA, the state plaintiffs in the Underlying Lawsuit may recover actual monetary loss or $500 per violation without showing willful or knowing conduct on DISH Network's behalf. 47 U.S.C. § 227(g)(1). Because the state plaintiffs may prevail on their Telephone Consumer Protection Act claims without demonstrating that DISH Network acted intentionally, damages obtained in the Underlying Lawsuit may not be of a type that are generally uninsurable as a matter of Colorado public policy. <u>See</u> <u>Am. Family Mut. Ins. Co.</u>, 816 P.2d at 957.

Additionally, even if Telephone Consumer Protection Act money damages are uninsurable as a matter of Colorado public policy, the plaintiffs in the Underlying Lawsuit also seek injunctive relief against DISH Network. <u>See</u> Case No. 09-3073, 2d Am. Compl., d/e 257 at 24–27. Travelers contends that the vast majority of courts have concluded

that, apart from pollution claims, the cost of compliance with an injunction is not regarded as a sum payable as damages under a liability insurance policy. However, beyond stating that a majority of courts hold this way, Travelers has neither developed this argument nor shown why the Illinois or Colorado Supreme Courts would find that the costs of complying with an injunction are not sums payable as damages under the Travelers Policy.

## V.  CONCLUSION

For the reasons stated, DISH Network's Cross-Motion for Partial Summary Judgment (d/e 24) is GRANTED. Travelers has a duty to defend DISH Network's interests in the Underlying Lawsuit. Furthermore, Travelers' Motion for Summary Judgment (d/e 20) is DENIED, as is Travelers' request for an order dismissing DISH Network's Counterclaims with prejudice. Finally, DISH Network's Motion to Stay (d/e 33) is accordingly DENIED AS MOOT.

IT IS SO ORDERED.

ENTER:  March 24, 2014

FOR THE COURT:                             s/ Sue E. Myerscough
                                          SUE E. MYERSCOUGH

UNITED STATES DISTRICT JUDGE